Our next case is No. 242268, Samesurf, Inc. v. Intuit, Inc. Okay, Mr. Block, go ahead. Good morning, Your Honors. Alan Block of McCool Smith on behalf of the appellant, Samesurf, Inc. May it please the Court. The Board erred in its construction of the term web browsing interaction data by relying on Intuit's experts' unsupported, conclusory, and irrelevant opinion that the plain and ordinary meaning of web browsing... The Board also relied on the claim language and the spec, too, right? It did after first looking to the plain and ordinary meaning and then trying to work backwards from that. It took a very broad meaning, changing the meaning from web browsing interaction data, converting that to data related to web browsing interactions. Well, which seems to be the sense in which it's used in Claims 5 and 15. You have to read related, though. But you can't use the term related to. In the context of the patent, however... Why doesn't that contradict what you said? No, and let me explain. I'd like to address that. So the language information related to a web browsing interaction appears in Column 3, Lines 10 through 16. It's in the summary section. It's describing the present invention. It says the present invention describes a method... You're not addressing my question. We'll give you time to go back to the specification. I'm specifically asking about Claims 5 and 15. You said that the Board made a mistake by construing it as information related to, and those claims use the exact phrase that you just used, related to, and make clear that web browsing interaction data is information related to. Right, okay. So in Claim 5, information related to shared user input web browsing interactions. So let's first understand what is a web browsing interaction. Now the specification describes that people on a synchronized browsing session interact with websites. They can share movies. They can share reading. They can go shopping together. They can make travel reservations. They can draw on screens, and those would be shared. Those various things are interactions. They're web browsing interactions. Those things are how a human interacts with a computer. The computer, though, doesn't understand those until it translates that into computer language. I don't understand what you're saying. It says related to shared user input depicted in the first web browser window. That seems to be the results of the search. No? No. It's saying where in the web browsing interaction data further comprises information related to the web browsing interactions. What I'm saying is related to is not so broad to include the result of the interaction. Related to here is describing the interaction itself. The description is depicted in the first web browser window. That's the results of the search. No, it's the interaction depicted in the first window. In other words, the host device has a shared window. So it may have unshared windows open as well, and a shared window. So it's going to do an interaction in the shared window. What's going to be on the shared window? The web page. The web page. Right, and then the user. Can't the web page also be part of the web browser interaction data? It's being shown on the first web browser window. It's being shown, but remember there's a session, there's browsing. So an interaction has to occur on one side, the host device, so that the guest device can replicate that interaction. And so the user can scroll up and down. The user can highlight on that web page. The user can click a link on the web page. That's an interaction. That interaction then is converted to computer data, which is then sent to the synchronized browsing session. That is the information related to the web browsing interaction. It's not the result. The system wouldn't work if it was the result, because the system that is described here works when a host device does some interaction on a website, clicks a link. That goes to the website and says, give me that link. Give me the page at that link. That same interaction is packaged into a message. That message is sent to the synchronization server. Did you have an expert who stated what you just said about how to interpret these claims? Yes, we did, Your Honor. Where do we find that? There's one page in the record. It's the very last page. It's page 2895. And the paragraph that's cited at 2895 is paragraph 45, where the expert is opining on the plain and ordinary meaning of web browsing interaction data in view of the specification, saying it's interchangeable with. Okay, but your expert is not addressing what we were just talking about. Right. He doesn't address that. He, I don't recall whether he addressed it or not, but, again, it's not in your record. And to be clear, your expert didn't say it would be impossible to include web page data in web browsing interaction. I believe he did say that, Your Honor. Paragraph 45? Not in 45, but he said it elsewhere. And I believe the board addressed that.  Where did the board address it? Where did he say it? He said in his declaration it's not in your appendix. It wasn't cited in your appendix. Okay. Well, what about column eight of the patent spec, line 35, which, as you well know, talks about how really any form of web-based content may be activated by a leading device to be relayed by the synchronization server and onto the following devices within the synchronized browsing session? That seems to really make clear that the patent is thinking expansively about what kinds of data can be driven by the host device that gets around to the invitee devices. Right. So the board interpreted that paragraph to mean that the actual data was being transferred from a web page through the synchronization server to the guest device. That's not what it says. What it says is that these things may be activated. Activated means caused to be turned on, hitting play for a movie, for instance. Then when it says relayed, the specification is very clear that what is being relayed is this information, the web page interaction information, for instance, on column seven. A following device, such a guest device, this is at line eight, may be defined as any device that receives relayed web page interactions from a web, from a synchronization server. Okay. So this isn't saying an actual movie or a music or a text document is being transferred from the host device through the synchronization server to the guest device. And that language doesn't appear here. Activated is different. And activated used elsewhere in the specification to describe clicking on a link. Column 21, lines 12 through 13, clicked or activated. 1255, column 12, line 55, activation. Hyperlink is clicked or activated by host device. So it's unfair to read activated to mean downloaded and transferred. Does your construction of web browsing interaction data limit it to what's disclosed as item 64 in figure 5A? It describes what's in, it doesn't, I wouldn't say limit it, but I would say it describes what is shown in communication 64, message 64. But it would exclude everything else that's described or depicted in figure 5A, correct? None of those under your construction could be the web browsing interaction data? No, because 64 is the only message that's being sent from the synchronization server to the guest device. So, I mean, it seems to me, and this is my concern with your position, the claims have a very broad term, web browsing interaction data. That term never appears in the specification anywhere, correct? That exact term does not, Your Honor. And it seems like your argument is nonetheless there's something about this specification that would tell one of skill in the art that it's essentially limited to what's depicted as item 64 in figure 5A. And I don't see what it is that gets one of skill in the art to that conclusion. Can you help me? So, the specification, well, the claim talks about, or is limited to a synchronized browsing session. So this is a session where both the host device and the guest device see the same thing at the same time. And both can make changes or act on what they're seeing jointly, correct? Both can interact with pages, correct. But in the claim, we're limited to the host device's interactions because the claim requires that the web browsing interaction data be associated with the host device that has initiated the session invitation. So it's speaking to one side of the pair at this moment in that, as far as the claim is concerned. But yes, either side can control. I would argue then that if one side is controlling, then it's the host device. And then when the other side controls, it becomes like a host device. And they shift. But in any event, what would tell one of skill in the art to exclude from the broad claim term web browsing interaction data, for example, the stuff or the data that's being sent back from the web itself? Because web browsing interactions are interactions that happen and they're performed by one of the two devices. In the spec that talks in the part in column seven, I'm sorry, in column three that I was referring to describing the present invention, describes the information related to shared web browsing interactions being performed by a host device, received by the guest device from the synchronization server, and then the guest device then performs that same shared web browsing interaction based on the received information. So if this was so clear, why didn't you have your expert say what you're saying? He did. It's just not in the record. It's not in your record. It wasn't important enough to include in the record. Well, I mean, the problem is the board accepted what he said in the sense that they agreed, if you read it, 38 and 39 of the appendix, they agreed with what he said. They agreed he described it correctly. They just were afraid that they were going to be, by reading, accepting the construction that Samesurf was proposing, it would exclude these other embodiments that the only place they found it at was in column eight that we discussed already, and had there not been a column eight and had the expert on the other side not said the ordinary meaning is data-related too and that's so broad, I mean, the problem here, too, is the construction is so broad, it's referring to webpages themselves, not even the partially filled webpages. There's no way a webpage can be sent from a synchronization server to a guest device where then that guest device has to do something else to access the website. If it has the webpage, no more steps are required, but this claim requires yet another step using the interaction data. You didn't appeal the IPR decision for the 591 patent, is that right? That's correct. That claim looks really close to the claim we're talking about right now. Is there a reason why you would appeal one and not the other? There was a very clear disclosure in LeBron of a URL in a cookie that, remember, the claim in 591 was specific about URLs in cookies, and so that was concerning. If we end up construing web browsing interaction data broadly like the board did, are the claims here essentially the same as the claims in the 591 patent? No, they're not. I mean, in terms of collateral estoppel, is that the question? Yeah. In terms of collateral estoppel, no, because the test is whether the differences between the claims make the issue of validity meaningful. Is there some meaningful difference among the claims to make that issue meaningful? And here it does, because we've got web browsing interaction data in one claim, we've got URL in cookie in the other, and we have a significant, we're here talking about claim construction. That's the first step of validity. So none of those cases cited ever dealt with this issue where one claim has a significant claim construction issue and the other doesn't. In those cases, the claims were so similar that the court just found they were too similar to be different enough for invalidity purposes. So there's collateral estoppel. I think you concede that if we adopt the board's construction, we should affirm that these claims are. Yes, we do, Your Honor. That's correct. Okay. We're out of time. We'll give you two minutes for rebuttal. Thank you. Mr. Saxtetter. Good afternoon, Your Honors. Michael Saxtetter of Fenwick & West on behalf of Appellee, in this case, Intuit. May it please the Court. The first thing I'd like to address is what the board did. I understand the claim construction is a de novo question, but the board did not start with Dr. Lieberman's opinion and then go on to the intrinsic record. There is almost 20 pages in the board's opinion that starts with the claim language. The first place where it references Dr. Lieberman is discussing how he views the claim language in connection with the other dependent claims, goes through that entire discussion, and then talks about the specification, then has a section called plain meaning, and eventually comes to the conclusion, as Dr. Lieberman did as well, that the construction should be the one that Intuit advanced, and that that was a correct determination in this case. As the Court has noted, very similar language to this appears in the specification. It appears in claims of other patents with the same specification, and there is no reason to limit the use of web browsing interaction data in the claims of the 145 patent to the very narrow construction that is asserted by Samesurf in this case. The construction, I think at one point in the blue brief, Samesurf says that the specification specifies intrinsically, or I think that's what it says, specifies by implication that this should be the construction. I don't think that's good enough under this Court's precedence, that there has to be some kind of a disclaimer of claims scope, or there has to be some kind of the patentee acting as its own lexicographer, and I don't think that happened. The claim term is web browsing interaction data. What different scope would it have if interaction did not appear? That is, it seems like your construction is really a construction of web browsing data, and therefore too broad. I think that they're very close to the same. I think that the interactions that the host device and the guest device in this case perform on with regard to the web server are part of the interaction data, and that needs to be sent as well. But that's not a limitation. Data has to be the result of the interaction. That's correct. But the interaction causes information from the web server to be sent to the host device, to be sent to the guest device. And so I don't think that's... In this art, would one of skill in the art understand web browsing data to be broader somehow, and if so, help me understand how, than web browsing interaction data? I don't think that web browsing data is as specific. It could relate to all kinds of things. It doesn't have to be the result of the interaction. I'm sorry? It doesn't have to be the result of the interaction. I think that's correct, but I don't think that we're arguing anything different. What's confusing me, I guess, is your construction, which was the board's construction of web browsing interaction data, is not limited to the results of the interaction. It also includes what the host device is sending to the web browser, correct? It does. So, again, I'm just struggling to understand, and maybe the word interaction isn't doing anything in this claim, but if you have a view as to what it's doing and how web browsing interaction data is narrower than web browsing data, I just would like to understand. It includes the data that is exchanged one way and another between the host and the website server. I'm just struggling to see what you're saying, the meaning of what interaction is doing. How is interaction narrowing this claim scope under your understanding of it? Well, I think it's related to the interaction. It has to be. But that includes what gets sent back. It includes, for instance, there's an embodiment in LeBrun that talks about partial website data that comes back. There are some pointers to go out to a website server and receive images, sound files, things like that, as a more efficient embodiment. That's part of website interaction data. So if the host asks for it, gets that back, that gets sent to the guest device, then that's part of the website interaction. Let me ask you this. It may be related. But as I understood the proposed construction from Samesurf for our claim term here, it was data describing interactions performed on a website by a host device. What's wrong with that construction? I recognize they go on to say and it excludes a couple other things, but put aside those exclusions. If I just stopped at data describing interactions performed on a website by a host device, is that wrong? I don't think it's sufficiently inclusive because it doesn't include what gets returned by the website server. For instance, the references to images, things like that. Because it's talking about performed on the website, I guess. That might be read as excluding what is sent back from the website. Correct. Is that the concern? The patent owner has another argument, I think, and it's an argument about the logic and structure of the claim itself, that it does not make sense for web browsing interaction data to include the web page because guess what? The claim keeps going and says the guest device takes that web browsing interaction data to go directly request the web page itself from the website, which will then send the web page back to the guest device. So why in the world are we going to jam the web page into web browsing interaction data up front? In other words, to adopt the board's construction gives really no work to do for the final limitation in this method performed by the guest device. That's what happens with the partial website embodiment in LeBron, where the host device sends via the synchronization server instructions that may include some things that are necessary and sufficient to render a web page, but there's also instructions to go out to a website server and obtain additional information.  So then are you modifying the board's construction such that it doesn't truly encompass the results of a web browsing interaction, only just the partial results? The board's construction is what it is. I'm saying this is one way that it could address Your Honor's question, where if information is returned, if there's nothing else to do and there's a website returned, that had presented an issue with the later portion of the claim. But it does not do that in the instance of, for instance, a partial website as is disclosed in LeBron. Does LeBron explain why it bothers to give the partial version of the web page to the guest devices? It does, Your Honor. It says that it's a matter of efficiency. I think that's at page 1627 of the appendix, where it's talking about making it more efficient in terms of bandwidth and so forth, so you don't have to send, if there are large files, image files, sound files that are part of the web page, they don't have to be sent through the internal system to the guest device. So if the court were to adopt, as was discussed a little bit, if the court were to adopt same-serves proposed construction, as I think was pointed out, the claims of the 591 patent are actually narrower than the claims of the 145. They have specific references to a URL and cookie information. That is something that would be, I think there's no dispute, would be encompassed within anybody's construction of web browsing interaction data. And that is something that same-serve has now relinquished an argument on. So even if they get this construction, they had the chance to litigate it for a narrower claim, and they didn't do it. And so they are collaterally stopped from raising the issue here. Thank you, Your Honor. Okay. Mr. Block, you have two minutes. Your Honor, Judge Stark, in response to your question about interaction, it is carrying a lot of weight, and it makes a big difference, because, as you said, without it, web browsing data would just be the web data itself, web browsing interaction data. Now, that's data that describes that interaction, clicking a link. The computer has to translate that to computer code to speak to other computers. The user's requested a link. Here's how to do it. Go sends that to the website. But also sends that communication, that information that describes the interaction to the sync server that then relays it to the guest device so that they, too, can replicate that same interaction. It's not about how you see the same web page at the same time. It's because both sides are replicating the same interaction. A web page is not being sent because a web page itself is not the interaction. It's the result of the interaction. There's a difference. And the question about the web pages in LeBron and the partial web page, LeBron also disclosed full web pages, ones that don't have the multimedia. Those are within this very broad construction we got from the board, yet that wouldn't meet the claim because, in that instance, the guest device, like you said, Judge Chen, has nothing to do. It's got the web page. So there's a flaw here in this construction. It's too broad. It's not describing what was the invention and ultimately what was claimed. Now, about the differences between the claims in the 145 patent and the 591 patent, there are other differences to consider that are relevant. So in page 34 of the brief, the red brief, there's a table showing the two claims side by side. In the second row of claim one of the 145 requires receiving from the synchronization server a session invitation. You don't see that limitation on the 591 side from the synchronization server, that invitation. That's relevant because you're going to talk about it in the next case. Dependent claim two has that receiving limitation. Not from the synchronization server. And then in page 36, the last element of both claims, one's talking about the 145 operating the application to access a website server independent of the synchronization server subsequent to the activation of the invitation. That's not at all present in the 591 claim, which just requires operating a browser based on the data received. Thank you.